UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| IN RE: ) | |
| ) | |
| L.O.I., LIMITED PARTNERSHIP, ) | Case No. 10-05955-FJO-11 |
| ) | |
| Debtor. ) | |
| _____ ) | |

**DEBTOR'S FIRST DAY MOTION FOR AUTHORITY TO USE CASH COLLATERAL FOR OPERATING EXPENSES, AND GRANTING REPLACEMENT LIENS**

L.O.I., Limited Partnership, as debtor and debtor-in-possession (collectively, the "Debtor"), by counsel, hereby requests the entry of an order pursuant to 11 U.S.C. § 363 and Federal Rule of Bankruptcy Procedure 4001(b) authorizing the use of "Cash Collateral," as that term is defined by 11 U.S.C. § 363(a), for operating expenses on an interim basis through a hearing on a final order, and the granting of replacement liens. In support of its motion, the Debtor states as follows:

**I. General Background**

1. On April 25, 2010 (the "Petition Date"), the Debtor filed a voluntary petition under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). The Debtor continues to operate its business and manage its property as a debtor-in-possession pursuant to §§ 1107(a) and 1108 of the Bankruptcy Code.

2. No trustee or examiner has been appointed in this chapter 11 case. No official committee of unsecured creditors has been appointed in this chapter 11 case.

3. This is a "First Day Motion" as that term is defined in Southern District of Indiana Local Rule B-9013-3(f).

4. This Court has jurisdiction over this motion pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper in this District pursuant to 28 U.S.C. §§ 1409 and 1409. This matter is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A) and (M).

5. The Debtor has discussed this filing with the courtroom deputy for the Honorable Frank J. Otte as well as the Office of the United States Trustee, and has advised the United States Trustee of the various First Day Motions and/or 9006(c) Requests in accordance with Southern District of Indiana Local Rule B-9013-3(b).

## II. Events Leading To Filing

6. Opened in Franklin, Indiana in 1992, the Debtor, d/b/a The Legends of Indiana Golf Course, has become a unique Hoosier golf destination. Open to the public, the Debtor features 45 unique and rewarding holes for all level of golfers. The crown jewel is its 27-hole championship course designed by James Fazio that features three separate 9 hole courses. However, the Debtor also boasts The Niblick, which is an 18 hole, par 3 course, a practice facility featuring the largest grass hitting area in Indiana, a fully stocked pro-shop, instructional classes, cart rental, and banquet facilities.

7. The Debtor's hard work and commitment to excellence has earned it numerous accolades, including being named "Indiana's Best Course" in 1996 and being rated among the nation's best courses by Golf Digest since opening in 1992.

8. Unfortunately, despite the charm, amenities, and meticulous maintenance of the Debtor's courses and facilities, it has not escaped the financial pressures faced by both the golf industry and businesses nationwide. Golf courses nationwide have been facing declining membership due to a proliferation of course expansion and a general decline in rounds played due to the belt tightening caused by the economic recession.

9. In addition to strained revenue, the Debtor's loan facility with JPMorgan Chase Bank, N.A. ("Chase") matures in June 2010. While the Debtor has been diligent in seeking replacement financing and has made significant progress towards that end, it has not yet put in place a complete refinance package.

10. Faced with the looming maturity of its senior secured debt and other challenges the Debtor believed that filing this chapter 11 proceeding was prudent and necessary in order to forestall any actions by Chase; avoid any disruption in the Debtor's business operations during its peak revenue season; continue to provide jobs to its 33 employees; continue to provide Hoosier golfers with an unparalleled public golfing destination; and to obtain the time necessary to complete the refinancing of its loan facilities.

### III.  Basis For The Relief Requested

11. As of the Petition Date, the Debtor is indebted to JPMorgan Chase Bank, NA ("Chase") in the approximate amount of $3,100,000.00. The Debtor is also indebted to Merchants Bank of Indiana ("Merchants") in the approximate amount of $300,000.00. The Debtor is also indebted to Heartland Community Bank ("Heartland") in the amount of $50,000.00.

12. The Debtor has performed a preliminary investigation and analysis of the UCC filings made by Chase, Merchants and Heartland and based upon this preliminary investigation believes that: (a) the Chase obligations may be secured by valid, enforceable and non-avoidable liens and security interests in substantially all of the property owned by the Debtor; (b) the Merchants' obligations may be secured by a valid, enforceable and non-avoidable lien and security interest in certain ownership interests the Debtor has in a real estate development located

adjacent to the Debtor's golf course; and (c) the Heartland obligation may be secured by a valid, enforceable and non-avoidable lien and security interest in the Debtor's pro shop inventory and proceeds.  However, in filing this motion, the Debtor does not concede that Chase, Merchants and/or Heartland hold valid, perfected and enforceable prepetition security interests in and to any of said property nor does the Debtor concede to the priority of any of Chase's, Merchants' or Heartland's asserted liens.  The Debtor retains the right to contest the validity, perfection and enforceability of Chase's, Merchants' and/or Heartland's alleged prepetition liens.

13. The Debtor's preliminary research also indicates that none of the listed secured creditors, Chase, Merchants or Heartland, have a lien which extends to the Debtor's postpetition revenue, including green fees, licensing fees, etc., with the exception of the sale of the sale of the Debtor's pro shop inventory, which would be subject to the prepetition lien(s) of Chase or Heartland.

14. The Debtor has an immediate need to use "Cash Collateral" (as that term is defined in § 363(a) of the Bankruptcy Code), which is likely subject to liens in favor of Chase, Merchants and Heartland, in order to permit, among other things, the orderly continuation of the operation of the Debtor's business, to pay employees, to maintain business relationships with vendors and suppliers and to satisfy other working capital needs.  Use of Cash Collateral is necessary to prevent the immediate and irreparable harm to the Debtor, its property and the property of the bankruptcy estate that would otherwise result if the debtor-in-possession was prevent from obtaining use of Cash Collateral for the continued operation of its business.

15. The Debtor has no present alternative borrowing source from which to secure sufficient additional funding to operate its business without utilizing its Cash Collateral.

16. The Debtor is unable to operate its business without interim use of Cash Collateral. At this time the Debtor is not seeking authority for postpetition financing under § 364 of the Bankruptcy Code.

17. Without interim relief, the Debtor will not be able to operate its business for fourteen (14) days or more until a final hearing on this motion can be held. Accordingly, the Court, as a preliminary matter, should enter an interim order authorizing the Debtor to use Cash Collateral consistent with the terms of this motion.

18. All of the Debtor's cash and cash equivalents (cash and accounts receivable) as of the Petition Date and all of the proceeds thereof securing the Debtor's obligations to Chase, Merchants and Heartland, among other things, constitute Cash Collateral. On the Petition Date, the Debtor had cash on hand or deposit in the approximate amount of $17,800, which, together with proceeds, is Cash Collateral within the meaning of §§ 363(a) and (c)(2) of the Bankruptcy Code.

19. This motion does not contain any provision specified in Southern District of Indiana Local Rule B-4001-2(c).

20. In compliance with Southern District of Indiana Local Rule B-4001-2(d), the Debtor anticipates that its approximate aggregate operating expenses for the last week of April 2010 and the month of May 2010 will be $121,000.00. The Debtor believes that it will be able to maintain the value of its combined cash and receivables at or above the same value of Cash Collateral as of the Petition Date. The Debtor will provide a budget demonstrating its income and expenses for the last week of April 2010 and May 2010 as a exhibit to an interim order granting this motion (the "Interim Cash Use Budget").

21. In accordance with § 363(c)(2)(B), Federal Rule of Bankruptcy Procedure 4001 and Southern District of Indiana Local Rule B-4001-2, the Debtor requests that the Court enter an Order authorizing its interim use of Cash Collateral for payment of its ordinary and necessary operating expenses through the date of a final hearing on this motion, as will be detailed in the Interim Cash Use Budget.

22. Chase, Merchants and Heartland may be entitled to adequate protection of their respective interests in the Debtor's Cash Collateral in order to be protected from any diminution in value of such Cash Collateral, including the diminution resulting from the use of Cash Collateral and the imposition of the automatic stay. Therefore, the Debtor agrees to, and requests authority to, provide the following adequate protection:

(a) The Debtor agrees to maintain the combined value of its cash on hand/deposited and accounts receivable cumulatively in an amount throughout the cash use period equal to or greater than the cumulative value of said Cash Collateral as of the Petition Date;

(b) The Debtor will continue to maintain its real estate, golf course and grounds at its current high level;

(c) The Debtor will continue to maintain existing insurance on its assets;

(d) The Debtor will grant Chase a postpetition lien in all of the assets of the Debtor to the same extent as Chase' valid, properly perfected liens in the Debtor's prepetition property, excluding bankruptcy causes of action, to the extent necessary to secure Chase for any diminution in the value of the Debtor's Cash Collateral securing Chase's prepetition obligations that occurs during the

6

period of cash use, subject to any prior existing valid lien superior to Chase on the Petition Date;

(e) The Debtor will pay Merchants the contractual non-default interest payment due on its obligations on the date specified in the loan documents supporting the Debtor's obligations to Merchants;

(f) The Debtor will grant Heartland a postpetition lien in all of the pro shop assets of the Debtor to the same extent as Heartland's valid, properly perfected liens in the Debtor's prepetition pro shop assets, excluding bankruptcy causes of action, to the extent necessary to secure Heartland for any diminution in the value of the Debtor's Cash Collateral securing Heartland's prepetition obligations that occurs during the period of cash use, subject to any prior existing valid lien superior to Heartland on the Petition Date;

(g) The Debtor will pay Heartland the contractual non-default interest payment due on its obligations on the date specified in the loan documents supporting the Debtor's obligations to Heartland;

(h) The Debtor shall use its Cash Collateral consistent with its Initial Cash Use Budget and those submitted to the Court, Chase, Merchants and Heartland from time to time hereafter; and

(i) The Debtor shall, with reasonable advance notice, permit Chase, Merchants and Heartland full and free access to the Debtor's books, records and place of business to verify the existence, condition and location of property in which Chase, Merchants and/or Heartland holds a security interest.

23. In the event the Court does not authorize the use of Cash Collateral, the Debtor believes that it will not be able to maintain its current business operations. Without the use of Cash Collateral, the Debtor will be seriously and irreparably harmed, resulting in significant losses to the Debtor, its estate and its creditors.

WHEREFORE, the Debtor respectfully requests that the Court enter an Order: (1) authorizing and allowing the Debtor to use Cash Collateral for its general ongoing business operations through the entry of a final order pursuant to § 363(c)(2)(B) of the Bankruptcy Code; and (2) granting the Debtor such other and further relief as the Court deems proper.

DATE: April 28, 2010

L.O.I., LIMITED PARTNERSHIP,
as debtor and debtor-in-possession,

By: /s/ Jeffrey J. Graham
Jeffrey J. Graham, one of its proposed counsel

Michael P. O'Neil
Jeffrey J. Graham
Liz J. Raynor
TAFT STETTINIUS & HOLLISTER LLP
One Indiana Square, Suite 3500
Indianapolis, IN  46204
Telephone:  (317) 713-3500
Facsimile:  (317) 713-3699
Email: moneil@taftlaw.com
jgraham@taftlaw.com
lraynor@taftlaw.com

1226055